All rise. Hear ye, hear ye, hear ye. This Honorable Appellate Court of the Second District is back in session. Pursuant to adjournment, the Honorable Susan Faye Hutchinson presiding. Please be seated. We're on to the second case of the morning call, 211-645. Maureen Henkel, on behalf of herself and the citizens and taxpayers of the City of West Chicago versus the City of West Chicago at all. On behalf of the Chattanooga, Indiana, Illinois, and Ohio Foundation for Fair Contracting, Ms. Cara Principe. On behalf of the FAA, the City of West Chicago, Mr. Scott McDonough. Ms. Principe, if you're ready. Good morning, counsel. May it please the court. This case is about a $2.2 million five-year contract for street sweeping, a municipal fleet, and small engine equipment repair and maintenance operations that was never competitively bid pursuant to Division 9. There's two issues today. The first is whether the work provided for in the contract is any work or other public improvement pursuant to Division 9. The second is whether competitive bidding was dispensed with by a two-thirds vote also pursuant to Division 9. There's a few key facts I would like to go over. On October 10, 2010, the City approved an ordinance approving the five-year, $2.2 million contract to be executed. However, the City took no action to dispense with competitive bidding. The contract was to be executed the same day with no notice to taxpayers that bidding would be dispensed with. In a single action, the City authorized and executed the contract without advertising for bids. The City erroneously used Municipal Code Division 10 as its authority to enter into the contract without advertising for bids. Specifically, Division 10 is applicable to those cities over 500,000 people, namely Chicago. The City used Division 10 as a way to get out from competitive bidding through its professional services exception. That exception is for contracts which, by their nature, do not lend themselves to competitive bidding. It's important to note that Division 9 does not contain such an exception. When it was brought to the City's attention that Division 10 was inapplicable, it claimed it was a Scribner's error and that its Home Rule authority allowed them to bypass the Municipal Code through its broad constitutional powers. When it was then brought to the City's attention that Home Rule authority is not unfettered, that pursuant to this district, the City would have had to pass an ordinance specifically rendering a statute section ineffective. It claimed that the work, while it would be governed under Division 9, is not, because it's not any work or other public improvement as construed by the statute, and even if it is, competitive bidding was effectively dispensed with by a two-thirds vote. The first issue is whether the work in the contract is any work or other public improvement pursuant to Division 9. The language of the statute is very broad. It states any work or other public improvement. It does not just state public improvement. Do you find the statute to be ambiguous or not? It is clear, but to the extent that it is ambiguous, we would use statutory rules of construction. So, no. It is clear any work or other public improvement. I mean, because both of you are arguing different sides of this, and probably reasonable people, reasonable minds. If reasonable minds can argue a statute two completely different ways, isn't it ambiguous? The plain language says any work or other public improvement. I think, I believe that that is very clear in its wording. What's the purpose of the word other in that phrase? Well, public improvement would tend to, other public improvement tends to go toward real, any permanent improvement upon real property. And because the word other is in there, does that not then describe any work? I think no. I think any work applies to any work that's maybe not on real property. Well, if it does, then what does the word other mean? It could apply to public works, I believe, as the title is of public works. The title of Division 9 is Purchasing in Public Works Contracts in Municipalities of Less than $500,000. So, other could refer to public works in the statute. Doesn't it talk about the construction of any work or public improvement? What is being constructed here? Yes, I think constructive is the, for that, for construction isn't necessarily what, construction is not defined in Division 9. And I think constructive would be the Illinois Profiling Wage Act, which does define construction as, it defines construction as any maintenance, repair, assembly, or disassembly work performed on equipment with our own, leased, or rented. And I think that that's constructive here, that it's not necessarily what one would typically think of constructing a building. I think it can be maintenance work and repair work. So the court in Western Lyon was mistaken when they relied on that in part as part of their holding? Well, I think that that is a different case with a different context. A lot of what Western Lyon relied on was the public versus private property aspect, and here it's completely public and property being serviced versus Western. Is your argument that any contract whatsoever, then, if it's over this dollar amount, has to be bid out? Well, there's limitations of a city under $500,000, you're right, $20,000 being the threshold, and also public, only that that is public work. So not any contract, but much, a lot of work would be considered any work. But if the legislature really wanted to say that, they could have said that, couldn't they? Because if we look at Division 10, there is a provision in there that essentially says that, and it's worded very differently than this provision. Well, I think Division 10 is very different from Division 9 in that it applies to a much more sophisticated city with much more sophisticated rules in how it must be run. Well, but I know you argued that in the brief, but what's the purpose of, you're saying there have to be two different methods of governance for a big city and a small city? Well, yes. Based on what? There's two different statutes. There's Division 9 and there's Division 10. No, no, I know. But, I mean, based on what underlying reason, what's the basis for your saying that a big city has to be run differently and everything has to go out for bid, but in a smaller city? Well, I think in a smaller city, everything needs to go out to bid as well, any work or other public improvement, and that's a very broad statement. And so I don't think necessarily the nature of the contracts is different between, what would need to go out for bid is different between Division 9 and Division 10. I just think that the rules to govern cities over 500,000 is different for a reason. There are two different statutes. The legislature found it necessary to have two different rules of governance between the two different types of municipalities. Do you identify the prevailing wage act to define construction anywhere in your briefing? I look at it to define public work. Okay. I didn't necessarily get to construction. I didn't name that in the brief. However, but here I believe that it's an instructive definition for these purposes. And what's the date of the prevailing wage act? When was it implemented? I mean, Western Lions in 1984. Do we have the prevailing wage act in 1984? I believe so. Okay. The reason Division 9 is very broad, the plain language of Division 9 being very broad, is supported by public policy. The purpose of competitive bidding is, as you likely know, to invite competition, guard against favoritism and providence, extravagance, fraud and corruption, and to secure the best work or supplies at the lowest price practical. But at this juncture, we don't know if the supplies or if the work was secured for the taxpayers at the best price practical because it was never competitively bid. It's certainly within the public's interest to bid a $2.2 million five-year contract out. The city would like the interpretation to be of any work or other public improvement to be any public work or other public improvement. Therefore, we're dealing with three definitions here, the first being that of any work, which there's no definition for good reason. The plain meaning of any work broadens the application to work that is not performed on real property. Well, it does except, as Justice Enoff said, any work or other public improvement. There seems to be a relationship between those seven words, six words, that tie them together as opposed to, I think what you're trying to say, is set them apart. Any work could be not of a permanent nature or public improvement could be of a permanent nature. Well, if you take the city's interpretation that it would be any public work or other public improvement and limit this to public improvement, we would still be right in our assertion if you look at the definition of public work. Again, even if you accept their argument, we'd still be correct because if you look at the Prevailing Wage Act, again, public improvement is not defined in this division. In the Illinois Prevailing Wage Act, it's defined broadly as public works includes any maintenance, repair, assembly, or disassembly work performed on equipment, whether owned, leased, or rented. So, if the work at issue is a public work, the definition of public work should be interpreted in a manner consistent with other Illinois statutes. And the Illinois Prevailing Wage Act is instructive because it deals with public work and municipalities, which Division 9 does as well. But that's inconsistent with the way it's been interpreted in case law. And by that, I don't mean this particular statute, but in Western line, it's under the Cities and Villages Act. So we're taking another part of that same exact act and we're interpreting public improvement to be something different than what you're saying. Well, I think Western line was the first case to interpret public improvement in Illinois, and I believe it's inapplicable to us because it identifies public improvement in one context and under a different statute. And in that case, garbage collection was from private residences and six city dumpsters was found not to be public enough to be a public improvement. This is a completely different case. All the work being done is on public property. There's not any private component to the work being at issue here. Was that the main holding in Western line, though, the public versus private? That was not. It was a large basis for the court's analysis, though, however. They looked to whether it was mostly private in nature or public in nature, and they said that it could hardly be held that garbage collection from mostly private residences could be public in nature or could be a public improvement. All right. You think the statute is clear, or you think as you read it, it's clear, and even as the city reads it, it falls under other statutory authority for definition, but it sounds like if you just look at these briefs that what you'd really like is the statute to be clearer. I mean, what do you want us to do if we agree with you? If you agree with me, I would like you to find that this work is any work or other public improvement because any work is a very broad concept. So that sounds more like a legislative issue to otherwise define any work, and that's definitely not our issue. Well, I believe any work is clear on its face that it would cover the work at issue as it's clear language. And so what you want is a redo at the village or the city level? You want them to put this out for bid. That's your ultimate goal. Yes, it is my ultimate goal. It gives notice to the taxpayers that that is their right, and they never had noticed that a $2.2 million five-year contract would be not competitively bid. Well, if they don't like this activity, couldn't they just as easily elect a new village organizational board to either not do it again or deal with this particular contract like the parking meters in Chicago? Well, I think that that wouldn't have put them on sufficient notice. This is a large contract, especially for West Chicago, a $2.2 million contract that spans five years. And I think that it was the taxpayer's rights to have noticed that it was going to be competitively bid, and the city completely sidestepped that process. All right, let's talk, if we can, while you have some time, about that process of the contract and the vote. The two-thirds vote? What is there in the language of the statute that leads you to believe that it's a two-step process instead of one? Well, the statute states any such contract may be entered into by the proper officers without advertising for bids if authorized by a vote of two-thirds. And I'm asking if what is authorized, the contract or dispensing with bids? I believe there is no case law directly in point, and I believe the plain language makes clear that a vote just to dispense with the advertising of bids is necessary, a prior approval of dispensing with bids. Authorized, the use of the word authorized in the statute is in the past tense, and I believe that that contemplates a condition precedent. And the words without advertising for bids must be given the meaning pursuant to principles of statutory construction. They're not just superfluous. But if the legislature wanted to actually require a condition precedent, they could have drafted this like they did Section 5-8-10-5, right, which talks about emergencies, and there has to be an emergency first declared before something else can take place. That's in Division 10. So we know the legislature knew how to use that language if, indeed, they wanted to, but they didn't do it here. I believe that having a separate vote is also – that interpretation is also supported by public policy because of the notice to taxpayers. They have no chance for notice if you just vote a contract and at the same time you don't vote. You have a vote for a contract and at the same time you're voting to dispense with competitive bidding. Well, there are other notice requirements that happen for village board meetings. Don't they have to post their meeting agenda, which would certainly be a public notice issue? And this – I'm sure somewhere on that agenda it said this contract for under this section. In the record, their resolution authorizing the mayor to execute this contract had nothing – and it's in the record – had no indication that voting – that dispensing with competitive bidding would be voted on. They just voted on the contract. So I believe that taxpayers weren't given proper notice pursuant to Division 9. With your argument, if two-thirds of the city council had said, yes, we're voting to dispense with bidding for street sweeping – a contract involving street sweeping, and they don't even know who they're going to contract with, and then this contract comes up for vote, does it have to be a two-thirds vote? I believe that needs a majority. Just a majority? A majority for the contract. Thank you. You'll have time for rebuttal. Mr. Hidalgo. Hi. May it please the Court, Council. My name is Scott Hidalgo. I represent the City of West Chicago. Here with me today is City Administrator Michael Gutmann and Director of Public Works Rob Flatter. This case is about how one section of the Municipal Code, Section 5-8-9-1, which I'll refer to as Division 9, affects the City's contract for street sweeping and for vehicle maintenance. The trial court correctly held that the public bidding requirement of Division 9 did not apply to this contract. The trial court went on to say that even if Division 9 did apply, the actions of the City of West Chicago completed the requirement to waive the public bidding. All right. I think we should focus. We do. You go first. No, no, you go. Well, if 8-9 does – if Division 9 doesn't apply, what does? Well, Your Honor, the Municipal Code allows cities in general to enter into any type of contract. That's within the city's corporate ability to govern. And this is also a home rule city. So under the Illinois Constitution and the Municipal Code, it has a wider ability to conduct its business. But not the widest because case law has restricted that interpretation. Correct, but it had the authority to enter into this contract. And this seems like it's kind of maybe your third and fourth arguments. I mean, the contract was entered into getting around competitive bidding by citing Division 10, which clearly didn't apply. And then when it was first raised that there was a problem with this contract, a potential problem with this contract, the city cited home rule, which you've abandoned that argument, I can see, in the briefs. Now we're on to the third and the fourth arguments as to whether or not Division 9 actually applies, and if it does, whether there was a two-thirds vote. Well, Division 9 does not require that the resolution state that it is Section 5-8-9-1 that it's passing – that it's approving the contract with. So regardless, Division 9 does not require the city to say this is why we're doing it. There is other authority, just the home rule authority or just the general authority of the Illinois Municipal Code for the city to have entered into this contract. I want to make sure I understand, though. You're not arguing home rule is a blanket thing to get away from competitive bidding under this contract. We're just saying that that is the general authority that the city can enter into the contract. But specific to this appeal, we're saying that Division 9 in regard to this contract does not apply. Why does Division 9 say any work? I mean, if we say that your argument is the correct argument and it's only public improvements that we're talking about, other public improvements in the construction of those, isn't any work surplusage? Are we basically finding there to be surplusage in the statute? Well, the statute narrows any work. The statute itself helps define what any work means. As Your Honor has brought up earlier, the statute twice refers to work as the construction of work or other public improvements. The statute also says any work or other public improvements shall be constructed. Street sweeping is not construction. Vehicle maintenance is not construction. And this interpretation was supported by Western Lines, where Western Lines defined what the term work or other public improvement, which is a term of art. They're read together. And it defined it as any permanent improvement to real property owned by a municipality. Permanent improvement, real property that is owned by a municipality. And that's how it defined or that's how it decided its case in regard to the garbage pickup. It said there is no permanency here. The court went on to state that if the statute were to be read as the plaintiffs in Western Lines suggested, that every positive act by the city would have to be publicly bid. The court rejected that, did not create this overarching rule that every single contract must be publicly bid. Instead, it said a statute that restricts the rights of a city to contract by requiring a bidding procedure should not be extended beyond its language. The activities in Western Lines, and in this case, are analogous. Street sweeping, garbage pickup. There's no, they're both tempering. There's no permanency to it. During the course of, this is hard to say, street sweeping, if it is determined there's a pothole, who fixes the pothole? Is this in municipal's contract? No. The municipal's contract is specifically for street sweeping and vehicle repair. Well, it does say, well, maintenance operation duties and functions, that relates just to the fleet repair and small engine repair? Yes. Okay. Doesn't have anything to do outside of just maintaining the equipment used to sweep or plow. Are you plowing? Is municipal plowing? Municipal does plow. Okay. But again, that's analogous to street sweeping. You're removing the snow. Right. Okay. And if any damage, God forbid, any damage is done during the sweeping or the plowing, that's the city's responsibility to fix? That's not municipal's? Under this contract? Under this contract, yes. That's how it reads.  Unless there's a lawsuit. And so if you look at the case law that we cited in our brief, the cases that deal with Division 9 deal with infrastructure, deal with the definition that Western Mind set out. Permanent improvement to real property owned by the municipality. You have the construction of a wastewater treatment plant. You have the construction of public works. You have the construction of a recreation center. Construction. That's not street sweeping and that is not vehicle repair. And to further prove this point, the court can look to Division 10 where there is a section in Division 10 that does exactly what appellant is arguing today. Division 10 says that pretty much every single contract needs to be publicly bid. I think this is important because it shows that if the state legislature wanted to put that language in, they could and they did. But they didn't do it in Division 9. It's nowhere to be seen. Is this statute ambiguous or not? I don't believe that it is. Then we don't look at Division 10. Let me say, if it's ambiguous, then we can look at Division 10 and follow your argument. But if it's not ambiguous, we don't look at anything else other than the statute. I think that you can decide this case just by looking at the statutory language of Division 9. All right. If we decide that there's an ambiguity, can we also look at other legislation such as prevailing wage and definitions contained therein? I think the municipal code would be the best place to start because it's all within the same statutory framework. The prevailing wage doesn't state what needs to be publicly bid and what doesn't need to be publicly bid. That is fine. But it defines work issues. It defines construction. It defines some of these terms that aren't defined here. Isn't that correct? The prevailing wage defines when the prevailing wage needs to be enacted. It doesn't state what any work or other public improvement means. That is specific to the municipal code. And that is the section that cities need to look to to see if they have to publicly bid or not. Counsel, do you want to respond to opposing counsel's interpretation of the language, if authorized by a vote of two-thirds of all the aldermen and trustees, I believe she indicated, if authorized referred to the dispensing with the bidding? I don't. I believe that the statutory language is clear. I think that, again, it requires public bidding, except that any such contract may be entered into if authorized by a two-thirds vote of the aldermen. So if two-thirds of the aldermen vote to approve the contract, the bidding provision is then waived. So it's not a two-step process. There is nothing in the contract to suggest that this is a two-step process. And I think their argument, as the court pointed out, it seems to be a letter to the legislature. It seems to be that they're asking that this statute be reformed, but that's the legislature's job. The only requirement in this statute is that two-thirds of the city council approve the contract. And if that occurs, then the bidding is waived. Is there any, I mean, if we accept that, then we're saying that the city residents, including their client, have no right to know how their money is being spent until after it's approved. Is that correct? No, that's not correct, because the Open Meetings Act was, they complied with the Open Meetings Act. The agenda had to be posted 48 hours before the municipality, before the city council met. This was done in open session. This is, there is no violation that would, that the city did, that would not allow the citizens to know exactly what's going on. Now, the posting of the agenda has to be done, that's correct. Is there anything within that language that says how specific that agenda has to be? Is there a specific reference to a contract with municipal, I apologize for not remembering the actual name, LLC, in the amount of $2.2 million will be considered at the meeting? Or does it just say improvements, maintenance, things of that nature? Your Honor, I do not, if I were to answer that, I would be, I do not know what the agenda specifically said. That wasn't part of the record of the law before Judge Sheehan opened it? No, I do not believe it was. And this isn't to say that the legislature just abandoned the idea of the need for public bidding. They actually put the requirement in Division 9 that a two-thirds vote needed to take place in order to waive the contract. Generally, you just need a majority vote to waive a resolution. So the state legislature addressed this issue by including this two-thirds vote. And again, that's what happened in this case. A unanimous city council approved this contract. And just to address quickly, the, well... It was 11-0, the vote, right? Yes. 11-0? Yes. With three abstentions? Three abstentions, correct. Because, I mean, the way the statute's written, if there were more abstentions, there might have been a problem with that two-thirds. Right, but... No more. No more. So, to conclude, this was a contract that did not require public bidding. And even assuming arguendo that Division 9 applied, the city took every step that it needed to do to waive the public bidding requirement. Therefore, we ask that this court affirm the ruling of the trial court and find in favor of the city of West Chicago. Thank you. One last question. Oh, sorry. Would it make sense that the contract or the resolution approving the contract note that this is done by, you know, two-thirds? Even though it's obvious if you look at what happened, that this action is being done pursuant to the city's authority to waive competitive bidding by a two-third vote. Was there any problem with throwing that language in? There wouldn't be a problem throwing it in, but that's not what the statute requires. The statute expressly states that if it's a two-third vote, you waive the public bidding. Thank you. Thank you, counsel. All right, Ms. Princeby, do you have some rebuttal? Yes. First, the case is not ambiguous. The language is clear. And why are we talking about other statutory authority? I mean, that's a very legitimate question. To the extent that definitions are not in municipal or in Division IX, I think it is instructive to look to what other similar statutes that deal with public works. So while your example that prevailing wage does give us some definitions, we don't have to accept those definitions? No, but it is instructive. But we do have to accept language of cases pursuant to stare decisis. Isn't that correct? Correct. And the language, as Justice Berk has pointed out previously, seems to be in opposition to each other, or they're not consistent with each other. The statutory references you're making and the case law references that have gone before us. Well, the one case, Western Line, I believe is less applicable. It might be distinguishable, but it's still something we have to look at. Correct. Second, if Division IX does not apply, the question is what does? Although West Chicago is a home rule unit and the Constitution gives them certain powers, there are limitations, which I have cited in the briefs. One of those limitations is Division IX. The work involved in the contract falls within the purview of Division IX. Any other decision would render multimillion dollar contracts like this one, in this case, unregulated. Third, just because cases under Division IX center around construction projects does not mean that the work in this case falls outside Division IX. One could infer that municipalities always regard this work as covered and therefore no litigation really ensues. Further, construction is not defined under Division IX. And lastly, the only thing that needs to be in the agenda is that the contract will be entered into. A reasonable person would assume that a $2.2 million contract would be competitively bid. A two-step process would require an agenda item that states dispensing with competitive bidding, then another item that says entering into the contract. This gives notice to the taxpayers of West Chicago, and this did not happen here. Now, the statute doesn't specifically call for a two-step process. I know your reading of it does. But, I mean, it could be a lot more specific. Couldn't it say that you must first vote on this two-thirds and then maybe even another two-thirds for the contract? It could be a lot more specific, correct? Well, I think that the clear language states that, like, such as the word authorized, if one has authorized the dispensing of competitive bidding, I think that's the plain meaning is that's what it's applying to. You know, that's the plain meaning to you and the plain meaning to counsel is it's the contract, not the, you know, authorizing the no bid. So, again, if reasonable minds can differ, we're left with an ambiguous statute, potentially, where we can look at other things. Again, look at Division 10, where there's an emergency provision that actually sets out you must find an emergency first, and then you can do certain things. It's kind of a step-by-step process in Division 10 that we don't certainly have here. That's correct. And if a two-step process is required in an emergency, certainly a two-step process would be required in times of less dire need, such as here. And it does not cost the city any more to have a two-step process, a two-step vote to give notice to the taxpayers. But you're making a public policy argument, and public policy, that was really decided by the legislature, correct? Correct. What if the city, any city, after an election, new board members come on or all the board members are retained, they do a kind of like a jury instruction, opening jury instruction, but it says, it's a resolution that says, in any contract where we are doing maintenance on the city, no matter what the amount, we hereby agree that by this resolution we are waiving the two-thirds, or we are waiving the necessary bidding, and two-thirds of the people will vote. Is that sufficient notice if it happens back, and let's just say it happens in the year 2010, but the contract's not entered into until 2012? Well, I think that would be like invoking their humble authority, which this court has held that in order to render a section ineffective, you have to do such a, you have to pass an ordinance rendering that section ineffective. As short of that, though, I think that that's insufficient. The taxpayers need notice. How much notice? A day, two days, 48 hours? As per the Open Meetings Act, I believe it's 48 hours. Thank you. All right, thank you, counsel, for your arguments. This case will be taken under advisement. A decision will be made in due course, and now we do stand in adjournment.